# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

**LINDA KUNDINGER**, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

**NRRM, LLC**, a Missouri Limited Liability
Company,

        Defendant.

**Case No. 17-CV-321**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Linda Kundinger ("Plaintiff" or "Kundinger") brings this action against

Defendant NRRM, LLC ("NRRM" or "Defendant"), individually and on behalf of all others

similarly situated (the "Class" as defined below), and complains and alleges upon personal

knowledge as to herself and her own acts and experiences, and, as to all other matters, upon

information and belief, including her attorneys' investigation.

## I.  NATURE OF THE ACTION

1.      The Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA") is a

federal law that was passed in reaction to a series of abuses of drivers' personal information held

by government entities.  The DPPA's purpose is to safeguard the personal information of

licensed drivers from improper use or disclosure.

2.      The DPPA requires all states to protect the privacy of personal information

contained in an individual's motor vehicle records, including, but not limited to, the driver's

name, address, and phone number.  While this type of information may be obtained from the

department of motor vehicles by any federal, state or local agency use in carrying out its

functions, safety purposes, or market research, the DPPA does not allow private companies to

obtain this information to solicit potential customers, advertise, or harass individuals – which is *precisely* what NRRM has done to Plaintiff and the other Class members.

3.     Indeed, despite the DPPA's restrictions on the use of personal information, NRRM violates the law by obtaining the information to solicit business by sending misleading letters to prospective customers.

4.     NRRM markets and sells aftermarket automobile service and repair warranties to motor vehicle owners and lessees.  Accordingly, one of NRRM's primary functions is to identify prospective customers to whom it can market the warranty products it sells, *i.e.*, persons who own or lease motor vehicles with manufacturer-supplied warranties that have expired or are about to expire.  To solicit sales, NRRM must obtain at least the name and mailing address of each of its leads.

5.     NRRM obtains sales leads from third-party data suppliers who have obtained personal identifying information of motor vehicle owners from motor vehicle records, including information originally gathered by the Wisconsin Department of Motor Vehicles ("Wisconsin DMV") and other state departments of motor vehicles throughout the country, which agencies have gathered that information for the purpose of registering vehicles and communicating with vehicle owners.

6.     Owners' names and mailing addresses, among other personal identifying information, constitute "personal information" as defined by the DPPA.  *See* 18 U.S.C. § 2725(3).

7.     "Motor vehicle records," as defined by the DPPA, include driver's licenses, vehicle registrations, and identification cards issued by any state department of motor vehicles,

as well as records maintained internally by the Wisconsin DMV and all other state departments of motor vehicles. *See* 18 U.S.C. § 2725(1).

8.      Plaintiff is a licensed Wisconsin driver and vehicle owner who supplied the Wisconsin DMV with her name and mailing address, as well as other personal identifying information when she applied for a Wisconsin driver's license and to register her motor vehicle.

9.      NRRM obtained Plaintiff's name and mailing address from a third-party data supplier who, in turn, obtained Plaintiff's name and mailing address from Wisconsin motor vehicle records.

10.     NRRM solicited Plaintiff to purchase an aftermarket motor vehicle warranty by mail.

11.     Plaintiff never consented, expressly or otherwise, to NRRM's acquisition or use of her personal information for any purpose.

12.     NRRM's acquisition and use of Plaintiff's personal information was not covered under any of the permissible uses denoted in 18 U.S.C. § 2721(b).

13.     Plaintiff's privacy interests were invaded by NRRM's acquisition of her personal identifying information from protected motor vehicle records and NRRM's use of that information for marketing and solicitation purposes.

14.     Plaintiff brings this lawsuit pursuant to 18 U.S.C. § 2724, on her own behalf and on behalf of all others whose personal information contained in motor vehicle records was obtained, disclosed, or used by NRRM for marketing or solicitation purposes.

3

## II.  JURISDICTION AND VENUE

15.      This is a civil action alleging Defendant's violation of the DPPA, a federal statute

enacted for the purpose of protecting personal information[1] and highly restricted personal

information[2] contained in individuals' driving records, and preventing individuals from being

harassed or otherwise inappropriately solicited at their home addresses.

16.      This Court has original subject matter jurisdiction over this action pursuant to 18

U.S.C. § 2724(a) and 28 U.S.C. § 1331.

17.      This Court has personal jurisdiction over NRRM, a Missouri limited liability

company, as it regularly transacts business within the State of Wisconsin, including but not

limited to its solicitation of Plaintiff.

18.      Venue is proper under 28 U.S.C. § 1391(b) and (c).

## III.  PARTIES

***Plaintiff***

19.      Linda Kundinger is a resident of Park Falls (Price County), Wisconsin, which is

located within the Western District of Wisconsin.

***Defendant***

20.      NRRM is a limited liability company organized under the laws of the State of

Missouri, and regularly transacts business in the State of Wisconsin.

---

[1] As defined in the DPPA, information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.  18 U.S.C. § 2725(3).

[2] As defined in the DPPA, an individual's photograph or image, social security number, medical or disability information.  18 U.S.C. § 2725(4).

4

21.    Defendant operates under several alternate business names, including: (1) Auto Service Agency; (2) Vehicle Protection Center; (3) CarShield; (4) National Dealers Warranty Inc.; and (5) StopRepairBills.com.

22.    The Better Business Bureau has issued a business rating of "F" to NRRM, because of misleading statements it has made in mail solicitations and on the company's business websites and numerous complaints received from consumers regarding its misleading sales and advertising practices.[3]

23.    According to the Better Business Bureau's website, it "has received numerous complaints regarding [Defendant's] company…[in which]…[c]omplainants primarily allege misleading sales and advertising practices, many times indicating the [Defendant] led them to believe they were the manufacturer or dealer…and that the [Defendant] made harassing calls or sent harassing mail solicitations."[4]

24.    Defendant sends unsolicited letters to individuals' homes after obtaining their personal information, in violation of the DPPA.  Some examples and excerpts of complaints received by the Better Business Bureau from Defendant's customers include, but are far from limited, to the following:

> **February 1, 2017**
> I received a marketing letter that I found to be almost a threat. An elderly person could take it as a threat. You should rethink your marketing strategy. The letter came in an envelope marked "Immediate Response Requested" in capital letter and bold. This is also on the letter itself which looks like a bill. The letter reads, "Our records indicate that you have not contact [*sic*] us to have a vehicle service contract activated. We are

---

[3] *See* https://www.bbb.org/stlouis/business-reviews/auto-service-contract-companies/carshield-in-saint-peters-mo-310030296/Alerts-and-Actions (last accessed April 24, 2017).

[4] *See* http://www.bbb.org/stlouis/business-reviews/auto-service-contract-companies/vehicle-protection-center-in-saint-peters-mo-310030296#reasonrating (last accessed April 24, 2017).

informing you that if your factory warranty has expired, you will be responsible for paying the repairs. However, if expired, you can still activate a service contract on your vehicle before it's too late." The letter even has a customer ID when I have not done any business with this company.

**January 18, 2017**
Letters in the mail are consistent and intentionally resemble a potential bill or required service, even though it does state "Requested." I recently received a letter with "IMPORTANT" and "CONFIDENTIAL" on the envelope. In the letter, there are phrases such as "Immediate Response Requested" and "Please Respond Within 5 Days." I of course call the company to ensure I am not behind on some payment that I was not aware of, and they immediately forward you to a sales associate who gives you a pitch about how unsafe your car is and within 3 minutes is asking what type of payment you would prefer to process. I attempted 3 separate times to be amicable and honest with the associate stating that no payments were going to happen that day and I wanted to simply confirm if any bills were outstanding. Each time the associate would pitch me again with how unsafe my car was and how any day anything could happen. I eventually had to hang up because both of us agreeing to hang up was simply not going to happen without much effort from my part. My biggest complaint is the fact that this company is extremely misleading with their mailings. It's a shame because there are many important items in the mail that do require an immediate response...so the more we are jaded by these types of tactics, the more likely we are to assume an important letter in the mail is similar and thus ignored/thrown away.

**December 15, 2016**
One of the many scam businesses that love to send people mail stating that their cars factory warranty has expired. They then require you buy a warranty through them. I DO HAVE A FACTORY WARRANTY THROUGH DODGE. So stop mailing me junk!

**December 7, 2016**
Car Shield strong armed my 74 year old mother into a policy she did not need. When asked to cancel the policy, they refused to do so, instead began to demand reasons for canceling. When not satisfied with our response, began high pressure sales techniques to keep her paying in their program all in the name of "customer service." It is no wonder they have a customer rating of 1.96 stars out of 5. If I could give it 0 stars, I would. DO NOT USE THIS COMPANY

**December 7, 2016**

we [*sic*] purchased a vehicle not even 30 days ago and to date have received 3 very aggressive letters stating we need to activate the extended warranty coverage that we paid for at the time of purchase. The letter leads you to believe you have to do something to receive the service for which you have already paid. It has a customer number and all pertinent information but it is NOT the company from which we bought our warranty and which was effective on the date of purchase. This is very deceptive information being put forth from a business I have not done business with. I find this type of communication to [*sic*] harassing and misleading.

**December 3, 2016**

I received a notice from carshield stating that her factory warranty had expired. This obviously alarmed her because her car was not even 2 years old and the notice resembled a letter from Chevy, this notice also came at the same time as a letter from Chevy warning her of a recall on her model car. She called the number provided and a representative convinced her to purchase their "platinum service" costing her payments of around $200 for the next 5 years! I was outraged at the fact they had taken advantage of her not knowing they were not affiliated with Chevy and the ridiculous price of their warranty. It was nearly three quarters the price of her car when it was new! I immediately called their customer service line and demanded they cancel this for her and refund her deposit of over $300. She did get a refund from them but their tactics of selling their services are borderline scamming! Do not ever contact this company regardless of what their notices state.

**November 26, 2016**

I received a letter in the mail assuming it was from the current dealer's coverage I am under. The letter said I "needed to activate my service contract" so I called in a hurry. I find it's a different company entirely. The guy I talked to on the phone started out real nice, and turned really pushy and aggressive, forcing a $3500+ warranty on me. I said I wasn't interested 5 or more times. He was still pushing for a credit card, attacking the fact that I am currently paying for additional coverage, and saying I'm being ripped off. I actually had to hang up, because he couldn't take the no. I could not believe he was trying to bully me into buying from him. I do not recommend their customer service department- can't speak for the actual service.

**November 9, 2016**
company sent me letter sating [*sic*] that I had not contacted them to
activate my vehicle service contract. I own a car that I did have a service
warranty on. So I called them. Should of [*sic*] known something was fishy
once they asked for the make, year, model and mileage as this should of
all been obtained from dealer when I purchased contract. Man started
giving me a sales quote. attempting to stop him several times and told him
I was very confused since I already had purchased warranty plan. asked if
he could confirm that I already had contract or not and for how long terms
were. He continued to go on with his sales pitch not confirming anything
but asking for me to spend over $700 dollars more a year. Asked to speak
to manager. He stated his manager was right next to him but never
transferred call. I ended up getting pretty upset being asked for more
money when I have a contract I already paid for. I ended up calling my
dealership. My service contract was activated at time of sale. Called this
company back to question them and talk to new person asking for
manager. Man read notes said that they never said I had a current contract.
I think this a huge scam try to get people to call thinking their contract will
expire charge even more money and then find out they are not even the
company your contract is with.

**October 9, 2016**
I am concerned about their privacy issues. I received a letter from them in a mail
regarding extending a warranty on my vehicle and the letter stated I had 5 days to
reply back. Confused I contacted my dealership where I purchased the vehicle and
they had no knowledge of the letter. I then contacted this company in question
and asked them how did they obtain my private information regarding my vehicle.
The representative I spoke to could not give my [*sic*] any answers as to where the
company gets their information.

**August 13, 2016**
This company will NOT stop sending unsolicited mail to me and my
address…Leave Me Alone. DO NOT SELL MY INFORMATION. This company
has NO AUTHORITY to invade my home regarding my vehicle. GO AWAY!

**August 1, 2016**
I have previously requested that our business be removed from the mailing list of
Auto Service Agency and ALL of its affiliates yet we continue to receive these
very misleading and deceptive mailings claiming our auto warranty is expired.
First, the warranty is NOT expired, and second, even if it were expired we would
never do business with these shady companies claiming to provide auto coverage.
Desired Settlement:  STOP all mailings from these vultures.

8

**July 18, 2016**
Not only was my address sold to this company and I was advertised to unsolicited [*sic*], but they harassed me and created a hassle to simply try and remove my name and address.

**May 3, 2016**
This company obtained my information from an unknown source and has been soliciting vehicle warranties. DO NOT EVER CONTACT ME. I would never buy a warranty from an out of state company for an automobile.

**April 27, 2016:**
I received a letter from this company saying that "our records indicate that you have not contacted us to have your vehicle service contract updated." This statement implies that I have an existing service contract with this company. The letter went on to offer a chance to "activate a service contract on your vehicle before it's too late." My first assumption was that they were the holders of the warranty that I purchased through my vehicle's manufacturer, and that there was some problem with that warranty that I needed to correct. Later I realized that I have no and have never had any business relationship with this company and that they were trying to mislead me. I assume they get information from public records about car purchases and they use that information to add plausibility to their letters. In any case, this letter caused me confusion and stress because it used intentionally misleading statements in an attempt to trick me in to [*sic*] purchasing an unnecessary and unwanted service warranty. I called the number on my letter…and confirmed that they are located in St. Peters, MO, so I am confident that I am filing this complaint against the correct company.

**February 8, 2016**
I need an official hand written apology from This company and their partner for treating me and stressing me with bogus letter with government seal th [*sic*] I will never use your service because Vehicle Protection Center and they keep sending us bogus treating [*sic*] letter with government seal…I am filing a better business complain [*sic*] again [*sic*] both you and them as well for causing me stress with their treating [*sic*] letter.

**January 21, 2016**
I received a letter that stated I needed to update my vehicle service contract. I did purchase an extended service for my car when I purchased it so I figured this is [legit]. I was forwarded to a gentleman that tried to sell me another extended contract and kept asking for the $395 he needed to get it going…I hung up on him since I wasn't giving him money. I then called the Honda dealership I purchased my car from and told them what happened and was told it was a scam to throw the letter away. I asked Honda how they got my information and they said the company hacked DMV and pulled the information.

**December 16, 2015**
Company either consistently (every 2 to 3 months) sends me unsolicited mailings concerning my vehicle warranty (which is still valid), or calls me on my cell phone (which is listed on the Do Not Call list). When I try to question the individual on the phone about who he/she represents, I never get a firm answer, and they usually call after 6:00 PMN [*sic*] eastern time.

**November 11, 2015**
I have now gotten 5+ items in the mail from this company. All of which are telling me that my "factory warranty" has expired. My vehicle is not even 1 year old by purchase or mfg date. I have verified with my dealership that warranty is still valid. All that having been said… I believe that this company is nothing more than a front to get peoples [*sic*] information to scam their accounts or to use for some other malicious act of fraud or identity theft.

**October 26, 2015**
Company sent an unsolicited mailing with no return address, using wording and materials designed to look official in an obvious attempt to dupe people who may not be skilled or knowledgeable in such tactics…I don't know whether this mailing directly violated any laws, but if it didn't, then the laws should be changed.

**June 18, 2015**
Auto Service Agency has obtained private information about me and my vehicle without my permission. Twice I called them in May and twice the [*sic*] refused to answer my questions regarding the source of the privacy leak.

**March 12, 2015**
Receiving unsolicited offers for vehicle warranty offers in which I nor anyone in
my family have any interest. I consider this harassment and scare tactics hoping to
force me or my family to buy into their scam offer for vehicle warranty service
contract. I nor anyone living at my address has made contact by any method,
requested information, or has any interest in conducting business with this
company or any third party they may or may not represent.

**August 15, 2014**
Harrassment [*sic*] by US Postal Mail…This company has repeatedly sent me
Extended Warranty "offers" under the guise of different company names.

**November 25, 2014**
Unsolicited vehicle warranty sales brochure. This company keeps sending me
unsolicited mailings in an attempt to get me to purchase an extended vehicle
warranty. Don't know how/where they got my name and address. I want them to
stop sending me these mailings. I'll never buy anything from them!

**October 27, 2014**
I received a deceptive looking physical piece of mail from this company which
made it appear as if my vehicle warranty was being handled by them (which it
was not)…This is unsolicited, unwanted contact from a company I want nothing
to do with.

25.     NRRM, through its various entities, offers "service contracts," which purportedly

provide warranty coverage for mechanical components of an individual's motor vehicle.  For

example, on NRRM's website, CarShield.com, NRRM asserts that its service "could save you

thousands in potential car repairs."

26.     In order to promote its business, NRRM obtains personal identifying information

originally gathered by the Wisconsin DMV, as well as the various departments of motor vehicles

across the United States, from third-party data providers.

27.     NRRM uses the personal information it collects to identify and solicit sales leads,

*i.e.*, individuals who own motor vehicles for which the manufacturer's warranty is soon to lapse

in violation of the DPPA.  NRRM sends solicitations and marketing materials to those individuals offering one of its "service contracts."

## IV.  GENERAL ALLEGATIONS

*The DPPA*

28.    The DPPA was enacted by Congress due to widespread concerns that personal information gathered by the states in connection with the licensing of motor vehicle drivers and registration of vehicles was being released, and even sold, to persons with no legitimate purpose in order to bolster the revenues of state departments of motor vehicles and unaffiliated third parties.  The result of this practice, as understood by Congress, was a massive invasion of drivers' and owners' privacy.

29.    Motor vehicle records are more reliable, and more accurate, than other sources of personal identifying information.  Armed with personal information contained in motor vehicle records, third parties could—and, before the DPPA was enacted, routinely did—conduct invasive investigations on the subjects of the information; mine it on an aggregated basis and resell the resulting targeted information to marketers; use it to stalk, threaten, or physically injure the subjects of the information; or register for products and services using the identity of the subjects of the information.

30.    Due to the DPPA, these criminal and tortious acts are more difficult to carry out using personal information contained in motor vehicle records.

31.    Congress conducted extensive analysis and fact-finding in connection with the DPPA's enactment.  According to Congress's conclusions, drivers (and others who provide their

personal details to state departments of motor vehicles) have a privacy interest in the personal information that they provide to state departments of motor vehicles.

32.     Accordingly, by enacting the DPPA, Congress provided a private right of action to protect privacy interests and, if needed, enforce those privacy interests in a court of law.  18 U.S.C. § 2724.

33.     Section 2722 of the DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under" 18 U.S.C. § 2721(b).

34.     Section 2721(b) provides a set of "permissible uses" of DPPA-protected personal information.  The permissible use exemptions to the DPPA allow the use of such information for a highly limited number of purposes designed to promote the public welfare; they do not permit such information to be obtained, disclosed, or used for marketing or solicitation purposes – which is *precisely* what NRRM does.

***NRRM's Business Model***

35.     NRRM, and/or its affiliates and agents, purchased DPPA-protected personal information identifying Wisconsin vehicle owners and other vehicle owners across the United States from third-party data suppliers for purposes of marketing to individuals who own vehicles for which a manufacturer's warranty may be about to lapse, and used that personal information to send marketing and solicitation materials to those individuals so identified.

36.     An example of the marketing/solicitation material NRRM sends to identified sales leads, as described in the preceding paragraph, is attached hereto as Exhibit A.  Exhibit A is the solicitation Plaintiff received on or about January 15, 2016.

37.     NRRM's ability to identify the target individuals and to send the marketing and solicitation materials, as described above, is only possible because NRRM obtains personal information derived directly or indirectly from motor vehicle records, or obtains copies of motor vehicle records themselves.

38.     Pursuant to 18 U.S.C. §§ 2721(b)(12) and 2722, NRRM is only permitted to obtain, disclose, or use personal information contained in motor vehicle records for purposes of marketing or solicitation if the individual to whom such information pertains provides "express consent," *i.e.*, consent in writing, for the data to be used in such a manner.  NRRM neither obtains, nor seeks to obtain, that consent.

## V.  PLAINTIFF'S EXPERIENCES

39.     In late December 2015, or early January 2016, Kundinger renewed the registration and license plate for her 2013 vehicle by submitting the required information to the Wisconsin DMV, including her name and mailing address.

40.     On January 15, 2016, Kundinger received, via the U.S. Postal Service, the NRRM's marketing/solicitation materials, attached hereto as Exhibit A.

41.     In its marketing/solicitation materials, NRRM identified Plaintiff's motor vehicle's make, model, and year on the front of the mailing, as well within the content of the letter enclosed therein, which stated:

> **THIS LETTER IS TO INFORM YOU** THAT IF YOUR FACTORY
> WARRANTY HAS EXPIRED, YOU WILL BE RESPONSIBLE FOR PAYING
> FOR ANY REPAIRS.  YOU CURRENTLY HAVE THE OPTION TO
> PROTECT YOUR VEHICLE BEYOND THE FACTORY WARRANTY.  TO
> PREVENT FRAUDULENT CLAIMS WE ASK THAT YOU RESPOND
> WITHIN 48 HOURS TO ACTIVATE YOUR COVERAGE.

*See* Exhibit A.

14

42.     Despite its official appearance, designed to suggest that the communication comes from a vehicle manufacturer or dealership, the bottom of the letter states, in fine print, that:

> Auto Service Agency is an independent nationwide company marketing vehicle service contracts on behalf of leading third party administrators.  Programs available may vary depending on vehicle use, mileage, state and preexisting conditions.  Auto Service Agency is not affiliated with any auto dealer or manufacturer.

*Id.*

43.     Upon information and belief, a third party data collection entity purchased Kundinger's personal information:  (1) directly from the Wisconsin DMV, after Kundinger submitted to the Wisconsin DMV the information required to renew her registration and license plate, which included DPPA-protected personal information; (2) from the dealership to which Kundinger provided her driver's license in connection with her vehicle purchase; or (3) from a third-party which obtained the information from the Wisconsin DMV and subsequently sold or otherwise disclosed it to NRRM.  In any case, the DPPA protects Kundinger's personal information, since both internal Wisconsin DMV records and Kundinger's registration and driver's license constitute motor vehicle records.

44.     In turn, NRRM then obtained Kundinger's personal information and the personal information of other Wisconsin vehicle owners and vehicle owners and lessees in other states from that third party, or an entity to which that third party sold or disclosed her personal information, for the purpose of sending marketing/solicitation materials, such as that attached hereto as Exhibit A, to Kundinger and other similarly-situated people.

45.     Among the DPPA-protected "personal information" obtained by NRRM was Kundinger's name and mailing address.

15

46.     Kundinger had no previous knowledge of or interaction with NRRM prior to receiving the materials attached hereto as Exhibit A and did not request that the materials be sent to her.

47.     Kundinger did not provide "express consent" to the Wisconsin DMV or any of its agents, the vehicle dealership from which she purchased her vehicle or any of its agents, or to NRRM or any of its agents, allowing her personal information to be obtained, disclosed, or used for solicitation or marketing purposes.

48.     By obtaining from motor vehicle records and using for marketing and solicitation purposes Kundinger's name and mailing address, NRRM has violated the DPPA by violating her privacy interest in her personal identifying information contained in motor vehicle records associated with her.

49.     By obtaining from motor vehicle records, disclosing, and using for marketing and solicitation purposes Kundinger's name and mailing address, the other third-party data collectors and suppliers described above – the identities of which are presently unknown to Kundinger – likewise invaded Kundinger's privacy interest in her personal identifying information, as reflected in motor vehicle records associated with her.

## VII. <u>CLASS ACTION ALLEGATIONS</u>

50.     Plaintiff brings this action individually and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") defined as:

> Each person, (1) from May 2, 2013, through the date of judgment herein, (2) whose name and mailing address (3) was obtained from a motor vehicle record by any person, (4) acquired by NRRM, and (5) used by NRRM for purposes of marketing and/or solicitation.

16

Excluded from the Class are persons who have expressly consented in writing to the acquisition, disclosure, or use of their "personal information" for purposes of marketing or solicitation; NRRM and its subsidiaries, affiliates, predecessors and entities with which it has merged; all persons who make a timely election to be excluded from the Class; governmental entities; the judge to whom this case is assigned and his/her immediate family; and Plaintiff's counsel as well as any agents, employees, or immediate family members of Plaintiff's counsel.  Plaintiff reserves the right to revise the Class definition based upon information learned through the course of discovery.

51.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by mail, Internet postings, and/or publication.

53.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, but are not limited to:

        (a)    whether NRRM obtained "personal information" (as defined by the DPPA) from "motor vehicle records" (as defined by the DPPA);

(b)     whether NRRM's acquisition, disclosure, or use of "personal information" from "motor vehicle records" was done knowingly;

(c)     whether NRRM's acquisition, disclosure, or use of "personal information" from "motor vehicle records" was permissible under 18 U.S.C. § 2721(b).

54.     Defendant engaged in a course of conduct giving rise to the legal rights Plaintiff seeks to enforce on her own behalf and on behalf of the other Class members.  Identical statutory violations and actual injuries (including invasion of privacy rights) are involved.  Numerous common questions predominate over any individual issues in this action.

55.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

56.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation, including DPPA litigation; and Plaintiff intends to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

57.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the Class members' claims, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VIII.  CLAIM ALLEGED

### CIVIL ACTION UNDER DRIVER'S PRIVACY PROTECTION ACT 18 U.S.C. § 2724(a)

58.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

59.     The DPPA prohibits the acquisition, disclosure, or use of personal information without the express, written consent of the person to whom such information pertains for purposes of marketing and/or solicitation, as set forth by 18 U.S.C. § 2721(b)(12) and 18 U.S.C. § 2722.

60.     Plaintiff and the other Class members did not provide express consent for their personal information to be used for the purposes of commercial marketing and solicitation.

61.     The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the Act

"shall be liable to the individual to whom the information pertains" and that individual "may bring a civil action in a United States district court." *See* 18 U.S.C. §§ 2722 and 2724(a).

62.     Pursuant to the DPPA, a "person" means an individual, organization, or entity, but does not include a State or agency thereof. *See* 18 U.S.C. § 2725(2).

63.     Defendant meets the definition of a person in that it is an organization or entity, and not a State or agency thereof. *See* 18 U.S.C. § 2725(2).

64.     Pursuant to the DPPA, "personal information" means information that identifies an individual, including, but not limited to, "name [and] address." *See* 18 U.S.C. § 2725(3).

65.     NRRM has, and continues to, knowingly obtain Plaintiff's and other Class members' personal information from motor vehicle records for purposes of commercial marketing and solicitation of Plaintiff and the other Class members.

66.     NRRM has not obtained Plaintiff's or any other Class member's express, written consent prior to obtaining such personal information from motor vehicle records for purposes of commercial marketing and solicitation of Plaintiffs and the other Class members

67.     In doing so, NRRM has acted willfully and with reckless disregard of the DPPA, the privacy rights of Plaintiff and all Class members, and the substantive and procedural statutory rights the DPPA affords to Plaintiff and all Class Members.

68.     Each act of knowingly obtaining, disclosing, or using Plaintiff's and other Class members' personal information from motor vehicle records for the purposes of commercial marketing and solicitation without first obtaining express consent constitutes a separate DPPA violation by NRRM.

69.     Pursuant to the DPPA, the Court may award actual damages, but not less than liquidated damages in the amount of $2,500 for each violation; punitive damages upon proof of willful or reckless disregard of the law; reasonable attorneys' fees and other litigation costs reasonably incurred; and such other pecuniary and equitable relief as the Court deems appropriate. *See* 18 U.S.C. § 2724(b).

70.     Plaintiff, for herself and each Class member, seeks damages in the amount of $2,500 for each violation of the DPPA; punitive damages; reasonable attorneys' fees and other litigation costs; and injunctive relief ordering NRRM to cease its unlawful practice of obtaining, disclosing, and/or using personal information from motor vehicle records for marketing and solicitation purposes.

## IX.  <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter judgment on her behalf, and on behalf of all other Class members, and against Defendant, as follows:

a.      declaring that this action may be maintained as a class action;

b.      certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and approving Plaintiff's selection of counsel as class counsel;

c.      granting judgment in favor of Plaintiff and the Class and against NRRM in the amount of $2,500 for each instance in which NRRM knowingly obtained, disclosed, or used personal information from a motor vehicle record for purposes of marketing or solicitation;

d.      punitive damages sufficient to deter NRRM and other businesses from abusing the privacy rights of drivers;

e.      reasonable attorneys' fees and litigation costs incurred;

f.      an order enjoining NRRM from any future acquisition, disclosure, or use of

personal information from motor vehicle records for purposes of marketing and solicitation; and

g.      all other relief that the Court determines to be appropriate.

## X.  JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.


/s/Bruce A. Schultz_____

Dated: May 2, 2017          **COYNE, SCHULTZ, BECKER & BAUER, S.C.**
Bruce A. Schultz
150 East Gilman Street, Suite 1000
Madison, WI  53703
Tel: (608) 255-1388

**STARR AUSTEN & MILLER, LLP**
Andrew B. Miller
201 South Third Street
Logansport, Indiana 46947
Tel: (574) 722-6676

Adam J. Levitt
Amy E. Keller
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312) 214-7900

***Counsel for Plaintiff and the Proposed Class***